[No. 48454-6.   En Banc.   March 10, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. EDWARD LEE WEBER, *Petitioner.*

*Kirk L. Griffin,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Douglas B. Whalley, Deputy,* for respondent.

CUNNINGHAM, J.*—Petitioner's case raised two issues. First, does our recent decision in *State v. Taylor,* 97 Wn.2d 724, 649 P.2d 633 (1982) deprive us of subject matter jurisdiction to hear cases involving felony flight prosecutions occurring prior to January 1, 1981? Second, did the trial judge err in denying petitioner's motion for mistrial? We hold subject matter jurisdiction exists. In addition, we find the trial judge did not abuse her discretion by denying petitioner's motion for mistrial. We therefore affirm.

Petitioner, Edward Lee Weber, was convicted of felony flight in violation of RCW 46.61.024. That statute provides:

> Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and his vehicle shall be appropriately marked showing it to be an official police vehicle.

The events leading to Weber's conviction are as follows: On December 16, 1979, Sergeant Orange of the Seattle Police Department observed Weber driving through a red light at 6th and James in Seattle. Sergeant Orange, the State's sole witness at trial, testified that he first spotted the petitioner's car as it went through the intersection

---

*Judge D. J. Cunningham is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amend. 38).

against the light. It proceeded toward the freeway entrance. Sergeant Orange pulled into the intersection behind the vehicle and flipped on both his siren and lights. At that point Sergeant Orange, driving a marked patrol car, was 1 block behind Weber. There was just one vehicle between them. Sergeant Orange testified that after he turned on his emergency lights, Weber accelerated and pulled onto the freeway entrance. Weber cut across several lanes of traffic (without signaling) and entered the freeway. He moved to the outermost lane of the freeway and, again, accelerated. Sergeant Orange testified that in pursuing Weber, he clocked him at 75 miles per hour. Sergeant Orange also stated that he pursued the petitioner a distance of about 3½ miles before Weber, without looking back, pulled over.

Weber testified at trial that he stopped at the light at 6th and James, let the traffic clear, and then proceeded through it while it was still red. He accelerated onto the freeway and continued south until he noticed the two blue lights of the police car and pulled over. Weber claimed that he didn't see the flashing blue lights until just before he pulled over. He also testified that he did not hear a siren—apparently because his car was old and noisy. After the arrest, the police discovered 28 grams of marijuana in petitioner's car.

The motion for mistrial stemmed from the testimony of Sergeant Orange. During his direct examination of Sergeant Orange, the prosecutor asked whether Weber had said anything about the occurrence. Orange responded by saying "[t]hat he [Weber] felt that he was in a lot of trouble for not stopping." Report of Proceedings, at 28. Defense counsel immediately objected to the statement. He argued that the statement should be suppressed because the prosecutor had failed to provide it to the defense before trial, as required by CrR 4.7. Sergeant Orange took part in this colloquy between counsel and the judge.

The trial judge ruled the State could not use the statement. The court also instructed the jury to disregard Sergeant Orange's testimony concerning this conversation with

Weber. The prosecutor then resumed his direct examination of Sergeant Orange. During the following exchange, however, Sergeant Orange repeated the forbidden statement:

Q. . . . . After you advised him of his constitutional rights . . . what if any statement did Mr. Weber make to you? A. That at the time, the reason he hadn't pulled over, he thought it was just a vehicle behind him with—[his] headlights had hit a blue tinted glass windshield and that was the reflection he was receiving. Q. Did he say anything else to you at that time? A. That he felt that he was in a lot of trouble for not stopping.

Report of Proceedings, at 41. Defense counsel objected, argued that Sergeant Orange had deliberately tainted the jury, and moved for a mistrial. The motion was denied but the trial judge again instructed the jury to disregard the statement.

The jury found Weber guilty as charged. Weber's conviction was affirmed by Division One of the Court of Appeals in an unpublished opinion, *State v. Weber*, 30 Wn. App. 1034 (1981). This court granted review. We affirm for the reasons discussed below.

## I

At oral argument, petitioner Weber raised, for the first time, the issue of whether this court had subject matter jurisdiction over his case. He urged our decision in *State v. Taylor, supra,* required that we dismiss his case for want of jurisdiction. In *Taylor,* this court held felony flights committed between January 1, 1981, and April 16, 1981, were decriminalized by RCW 46.63.020. The decision was the result of the following events. The Legislature, by enacting RCW 46.63.020, decriminalized minor traffic offenses. That statute took effect January 1, 1981. The Legislature excepted, however, certain, more serious traffic offenses from the decriminalization. Felony flight was not among those exceptions.[1] When the Legislature realized its error,

---

[1]Since the issue was not raised by petitioner, we do not address the possible effects of former RCW 46.61.010.

it amended RCW 46.63.020 and reinstated felony flight's status as a crime. The remedial act took effect April 16, 1981. *Taylor* recognized the Legislature's failure to except felony flight from the original version of RCW 46.63.020, and held that this omission resulted in its being decriminalized from that date to the date the remedial amendment took effect. Weber now argues that our decision in *Taylor* requires us to find that felony flights committed prior to January 1, 1981, were decriminalized by implication. Petitioner's claim is without merit.

■ Petitioner's argument clearly contradicts RCW 10.01.040. That statute provides:

> No offense committed and no penalty or forfeiture incurred previous to the time when any statutory provision shall be repealed, whether such repeal be express or implied, shall be affected by such repeal, unless a contrary intention is expressly declared in the repealing act, and no prosecution for any offense, or for the recovery of any penalty or forfeiture, pending at the time any statutory provision shall be repealed . . . shall be affected by such repeal, but the same shall proceed in all respects, as if such provision had not been repealed, unless a contrary intention is expressly declared in the repealing act.

Petitioner urges, despite the clear language of this statute, that the case of *State v. Zornes*, 78 Wn.2d 9, 475 P.2d 109 (1970) justifies a contrary result. That case involved a change in the statutes pertaining to the illegal use of marijuana. This court held that the statute, which classified marijuana as a dangerous drug rather than a narcotic, would be applied retroactively. The holding in *Zornes* was based on language in the new statute which stated that the provisions of the chapter governing narcotics "shall *not ever* be applicable to any form of cannabis.'" (Italics ours.) *Zornes*, at 13. The court noted that

> If the act in question is to have only prospective effect, the words "not ever" preceding the words "be applicable" are unnecessary. We must assume that the legislature added these words for a purpose, and that purpose it would seem is to direct the courts to refrain from applying those provisions to offenses involving cannabis.

*Zornes,* at 13.

As evident by the language above, the court's holding in *Zornes* was strictly a matter of legislative interpretation, limited to the statute then before the court. Furthermore, *Zornes* is unlike the situation presented here. Unlike *Zornes,* nothing in RCW 46.63.020 suggests an intent to make the decriminalization retroactive. Absent such language, the case is clearly governed by the saving statute, RCW 10.01.040. Also, the decriminalization of felony flight was inadvertent, as is obvious by the Legislature's action in quickly amending the statute when the mistake was realized.

## II

Petitioner next argues that Sergeant Orange's reference to inadmissible testimony so prejudiced his case that he was denied a fair trial. To support this argument, the petitioner asserts the police officer's repetition of the statement was deliberate and that the statement was the only evidence directly on the issue of whether he acted willfully. He concludes, therefore, the statement necessarily tainted the proceeding.

The Court of Appeals rejected the notion that an intentional statement must be treated differently from an inadvertent one and evaluated the issue of prejudice under the constitutional harmless error standard. That standard requires that a court inquire as to whether any rational trier of fact could have found the defendant guilty "*beyond a reasonable doubt.*" *State v. Evans,* 96 Wn.2d 1, 4, 633 P.2d 83 (1981).

The reasonable doubt analysis does not, however, lend itself to problems involving trial irregularity. In a harmless error case, two inquiries are made: First, was there an error of law implicating a constitutional or nonconstitutional right? Second, was the error prejudicial? Here, the legal error, if it exists, is that the petitioner's trial was unfair. Thus, the 2–part analysis required by the reasonable doubt test does not aid our inquiry. Consequently, some other test is needed. The standard used by this court in

*State v. Nettleton,* 65 Wn.2d 878, 400 P.2d 301 (1965), *State v. Johnson,* 60 Wn.2d 21, 371 P.2d 611 (1962), and *State v. Taylor,* 60 Wn.2d 32, 371 P.2d 617 (1962) suggests the more appropriate inquiry is directed at the effect of the statement. In these cases, the court determined whether a new trial must be granted by asking whether the remark when viewed against the backdrop of all the evidence so tainted the entire proceeding that the accused did not have a fair trial.[2] *See, e.g., Nettleton,* at 880.

The three cases all identify this test. They contain, however, conflicting language as to the relevance of whether the statement was intentional or inadvertent. For instance, in *Johnson* the court stated:

> We do not place undue weight . . . on the fact that the reference to "parole officer" was inadvertent, . . . for the remark, if prejudicial, would have substantially the same effect on defendant's rights to a fair trial whether the statement was inadvertent or intentional.

*Johnson,* at 29. In *Taylor,* on the other hand, the court, in sustaining the trial court's decision to grant a new trial, emphasized that the remark was deliberately made by an experienced police officer. *Taylor,* at 36–37. Then in *Nettleton,* in the same paragraph, the court seemed to say that it did and did not matter. Thus, in footnote 4, the court observed:

> Whether the reference is inadvertent or intentional does affect our attitude toward the occurrence. If we are persuaded that a prosecuting attorney or a witness for the state is deliberately trying to deprive the defendant of a fair trial, we will assume that he succeeded in his purpose and grant a new trial.

*Nettleton,* at 880 n.4.

The better rule, suggested by the Court of Appeals and adopted by us here, is that the judge should not consider whether the statement was deliberate or inadvertent. That

---

[2]The Court of Appeals also identified this standard but resolved the issue ultimately by applying the reasonable doubt standard. This analysis confuses two distinct tests that apply in different circumstances.

inquiry diverts the attention from the correct question: Did the remark prejudice the jury, thereby denying the defendant his right to a fair trial? This prejudice test was recently used by the United States Supreme Court in a case dealing with prosecutorial misconduct. *See Smith v. Phillips,* 455 U.S. 209, 71 L. Ed. 2d 78, 102 S. Ct. 940 (1982). It applies equally well to the facts of this case.

We turn now to evaluating the fairness of petitioner's trial. To determine whether a trial was fair, the court should look to the trial irregularity and determine whether it may have influenced the jury. In doing so, the court should consider whether the irregularity could be cured by instructing the jury to disregard the remark. *See generally State v. Gilcrist,* 91 Wn.2d 603, 590 P.2d 809 (1979). *Gilcrist* suggests the following standard for reviewing trial irregularities:

> A mistrial should be granted only when "nothing the trial court could have said or done would have remedied the harm done to the defendant." In other words, a mistrial should be granted only when the defendant has been so prejudiced that nothing short of a new trial can insure that defendant will be tried fairly. Only those errors which may have affected the outcome of the trial are prejudicial.

(Citations omitted.) *Gilcrist,* at 612.

Here, the trial judge properly denied the motion for mistrial. We first consider the seriousness of the irregularity, which, in the instant case, was minor because the trial judge's decision to exclude the statement itself was error. The trial judge assumed the statement must be suppressed because it had not been provided to the petitioner as required by CrR 4.7(a)(1)(ii). In *State v. Thacker,* 94 Wn.2d 276, 280, 616 P.2d 655 (1980), however, this court stated quite clearly that suppression of evidence is *not* a proper remedy for failure to disclose. Thus, no prejudice could arise from admission of this statement.

Second, contrary to the petitioner's assertions, the statement in question was cumulative evidence on the issue of

whether he willfully failed to stop. The other evidence included: (1) the distance of the chase; (2) the speeds reached by the petitioner's car; (3) his disregard for other vehicles; (4) and the 28 grams of marijuana which provided a strong motive for avoiding the police.

Third, the court must presume that the jury followed the judge's instructions to disregard the remark. *See State v. Johnson, supra.* Finally, since the trial judge is best suited to judge the prejudice of a statement, we review it under the abuse of discretion standard. *See State v. Johnson, supra; State v. Taylor,* 60 Wn.2d 32, 371 P.2d 617 (1962). Here, there is substantial evidence to support the court's finding that the petitioner was not prejudiced.

In conclusion, we hold subject matter jurisdiction exists to decide this appeal. As to the merits of the appeal, we hold the trial judge did not abuse her discretion in denying petitioner's motion for mistrial. The decision of the trial court is therefore affirmed.

WILLIAMS, C.J., STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., and HENRY, J. Pro Tem., concur.