IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32254-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES C. AUSTIN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — James Austin appeals his conviction on one count of first degree child molestation, arguing that the trial court erred by excluding portions of his expert's testimony, the prosecutor committed misconduct in closing argument, the trial court should have granted him a mistrial, and the court imposed legal financial obligations (LFOs) without a sufficient inquiry. We affirm.

## FACTS

Mr. Austin was charged with one count of first degree child rape, one count of first degree child molestation, and one count of first degree incest. The matter ultimately proceeded to jury trial in the Chelan County Superior Court. The jury acquitted him of the rape and incest counts, but, as noted, convicted him on the molestation charge.

Mr. Austin had primary custody of his two children, J.A. and A.A., after he separated from their mother. A.A., then age 9, was identified as the victim of the three charges. Mr. Austin and the children lived in his mother's house. He had the basement bedroom, while the two children shared the two upstairs bedrooms with his mother. However, most nights the two children slept with their father in his bedroom.

One evening A.A.'s maternal grandmother overheard A.A. explaining to her cousin about her father touching her with his "thing." A.A.'s grandmother summoned A.A.'s mother who asked A.A. what had happened. The child told her mother that on five occasions she had awakened to feel her dad touching her with his penis, which had been taken out of his boxers. The next day the child and her mother made an oral report to a deputy sheriff. A detective, with the assistance of a child protective services (CPS) investigator, subsequently interviewed both J.A. and A.A. The older child reported no incidents, but A.A. described how her father would pull his penis out and rub against her. She indicated that on one occasion he achieved penetration.

The detective, Randy Grant, then arranged an interview with Mr. Austin. The detective used the "Reid" technique to conduct the interview. At trial, the deputy prosecutor was allowed to play a recording of the interview to the jury. The prosecutor also handed each juror a transcript of the recording. The jurors would turn the pages of their transcripts in conjunction with the recording. Forty-five pages into the recording, the prosecutor paused it and explained that he was looking ahead in the transcript and

2

noticed that he had inadvertently distributed copies made from his own annotated version. He requested time to correct the mistake. The markings included one page where statements were underlined and seven other pages with marks in the margins alongside the question.[1]

The defense moved for a mistrial. The trial court noted (1) that the situation was a product of inadvertence, (2) that the jury was not being exposed to anything new or inadmissible, and (3) that a limiting instruction could be offered. Even if the jury happened to flip ahead, the body of evidence is so large, that a few sections of underlining would not likely have a great impact. The court concluded that, under the totality of the circumstances, the mistake did not expose the defendant to unfair prejudice. The court instructed the jury to disregard any markings in the transcript.

The prosecutor sought pre-trial to limit testimony from defense expert Dr. Deborah Connolly. The purpose of her testimony was to explain the nuances of the Reid technique and to offer expert opinion on its coercive effects. The technique prompts the questioner to first presume guilt and then offer a "face-saving" justification, i.e., the questioner presents a suspect with two options. "Either you are a premeditated, calculating criminal or" "you're an unfortunate character who found themselves in a bad spot and made a mistake." Dr. Connolly posits that this method heightens the anxiety of

---

[1] The trial court described the notations as "placeholder marks, in the margin."

3

the suspect and decreases voluntariness, in part, because it is often misinterpreted as an offer of leniency. She also believed that the technique increases the rate of false confessions.

The trial court excluded testimony relating to her opinion of the technique's involuntariness, frequency of false confessions, and her opinion that the detective's statements could be interpreted as offers of leniency under the Reid technique, but allowed her to describe the technique and the nature of the questioning. Dr. Connolly then testified under those limitations. Mr. Austin took the stand in his own defense and denied molesting A.A. He testified that there were occasions when he had awakened to find his penis erect and his daughter sleeping against his body, but denied ever intentionally having sexual contact with her. He contended that the form of the interview questioning left him unable to answer the detective correctly, but acknowledged that some of his answers showed awareness that his erect penis had touched his daughter.

In closing argument, the deputy prosecuting attorney made several statements that are at issue here. Addressing the testimony that the interview technique left Mr. Austin to choose among incorrect answers, the prosecutor argued:

> MR. STEVENSEN: He appears to be mature. I mean, he's 34 now.
> He appeared to have at least average intelligence.
> He has presented no evidence, whatsoever, that he, in particular - -
> MR. HOWARD: Objection, Your Honor, that misplaces the burden of proof.
> MR. STEVENSEN: I withdraw that. And my apologies.

4

MR. HOWARD: And I'd ask the Court to move - - to strike the comment.

THE COURT: The jury will disregard.

MR. STEVENSEN: My mistake. I stepped on over a little. I apologize, ladies and gentlemen of the jury. Sometimes I get caught up, and I lose it.

Report of Proceedings (RP) at 633-634.

Later, the prosecutor said:

MR. STEVENSEN: Then [Mr. Austin] goes in, and gives a statement to law enforcement, admitting most - - not all; he doesn't admit the penetration, but he admits most of it.

Okay, so what do we do?

Well, if he didn't do it, then we have to have two things going here. He's got to prove two separate things.

Well, strike that. He doesn't - - he doesn't have to prove anything. Except define penetration, he has to prove that it wasn't conscious. So, sorry, Stuck to myself again.

The State has to prove everything. But, having done so, how does he explain it?

RP at 679.

During rebuttal arguments, the deputy prosecutor stated:

MR. STEVENSEN: He used the Reid technique. Oh, my God, the Reid technique.
You know, you got Dr. Connolly coming here. She's a nice lady.
Academic and, you know, ivory tower kind of person. Everything is perfect. She's not in the trenches, with the police.
Do you think that the police can't use any kind of techniques to try and get people to confess?
Are we supposed to let nine-year-old girls be raped, and not try and get to the bottom of this?

MR. HOWARD Objection, Your Honor. We need - - we're going to need to approach or take this outside the presence of the jury.

THE COURT: Sustained.

5

The jury will disregard the last statement, by Mr. Stevensen.

RP at 681.

The jury acquitted Mr. Austin on the two counts that required proof of penetration, but convicted on the molestation count. The trial court imposed LFOs totaling $3,910. Mr. Austin then timely appealed to this court.

## ARGUMENT

Mr. Austin argues that the court erred in limiting his expert's testimony, the prosecutor committed misconduct in closing argument, the court erred in denying his request for a mistrial concerning the transcript, and that an insufficient inquiry was conducted before imposing LFOs. We address the four issues in the order stated.

*Expert Testimony*

Mr. Austin first contends that the trial court erred in limiting some of the issues his expert could address concerning the Reid technique, thereby infringing on his right to present a defense. The trial court acted within its discretion and did not err by excluding portions of the proffered testimony.

Several general principles govern review of this argument. To admit expert testimony, the proponent must show that the testimony would be helpful to the jury. ER 702. Expert testimony is not helpful if the judge determines that the testimony is based on speculation or is unreliable. *Miller v. Likins*, 109 Wn. App. 140, 148, 34 P.3d 835

6

(2001); *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 918, 920, 296 P.3d 860 (2013). A court also may not admit expert testimony if the court determines that the facts or data relied on by the expert are not of a type reasonably relied upon by experts in the particular field. *Lakey*, 176 Wn.2d at 918.

A trial court's evidentiary rulings concerning expert testimony under ER 702 are reviewed for abuse of discretion. *State v. Greene*, 139 Wn.2d 64, 70, 984 P.2d 1024 (1999); *Moore v. Harley-Davidson Motor Co.*, 158 Wn. App. 407, 417, 241 P.3d 808 (2010). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). "If the trial court's ruling is based on an erroneous view of the law or involves application of an incorrect legal analysis, it necessarily abuses its discretion." *Dix v. ICT Grp., Inc.*, 160 Wn.2d 826, 833, 161 P.3d 1016 (2007).

A criminal defendant also has a constitutional right to present evidence in his own defense. *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State v. Thomas*, 150 Wn.2d 821, 857, 83 P.3d 970 (2004); *State v. Maupin*, 128 Wn.2d 918, 924, 913 P.2d 808 (1996). There is, however, no right to present irrelevant or inadmissible evidence. *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983).

Mr. Austin argues that the court did abuse its discretion, to his detriment, in precluding some of his expert's testimony. We disagree. A similar challenge to

the Reid technique was rejected in *State v. Rafay*, 168 Wn. App. 734, 285 P.3d 83 (2012), *review denied*, 176 Wn.2d 1023 (2013). There an expert had sought to testify that the Reid technique was one of the coercive practices that could produce false confessions. *Id.* at 784. The trial court excluded the expert's testimony and Division One affirmed, concluding that the information was not helpful to the jury. *Id.* at 790.

Here, the trial court permitted the expert to testify concerning the characteristics of the Reid technique and point out where those varying aspects were used in the course of the interview. This is far more than was permitted in *Rafay* and allowed the jury to understand how the interrogation was structured and to evaluate the particular techniques used to obtain Mr. Austin's statements. In contrast, the topics excluded by the trial judge were either not related to this specific case (whether the Reid technique produces false confessions) or were not the proper subject of expert testimony (whether Mr. Austin's confession was false). The court had very tenable reasons for excluding the portions it did.

The expert was permitted to testify to a significant amount of material. There was no abuse of discretion in excluding irrelevant or improper topics. The court did not err in its ruling in limine.

*Closing Argument*

Mr. Austin next argues that the prosecutor committed misconduct in closing argument by shifting the burden of proof and appealed to the passions of the jury. Mr. Austin cannot establish any prejudice to his right to a fair trial because the trial judge corrected any errors that were made.

Once again, very well settled standards govern our review of this argument. To prevail on a claim of prosecutorial misconduct, a defendant must establish that the prosecutor's conduct was both improper and resulted in prejudice in light of the context of the entire record and the circumstances at trial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). Prejudice exists only where there is a substantial likelihood the misconduct affected the jury's verdict. *Id.* at 442-443. When a defendant fails to object to an improper remark, he or she waives a claim of error unless the remark is "'so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'" *Id.* at 443 (quoting *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)). This court reviews alleged improper comments in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

A prosecutor has wide latitude to argue reasonable inferences from the evidence. *Thorgerson*, 172 Wn.2d at 448. However, the prosecutor commits reversible misconduct when he urges the jury to consider evidence outside the record and appeals to passion and prejudice are typically based on matters outside the record. *State v. Pierce*, 169 Wn. App. 533, 553, 280 P.3d 1158 (2012). Furthermore, a prosecutor is not allowed to assert in argument his personal belief in the accused's guilt. *State v. Reed*, 102 Wn.2d 140, 145, 684 P.2d 699 (1984).

Finally, it is improper for the prosecutor to shift the burden of proof to the defendant or argue that the defendant failed to present evidence. *E.g.*, *Thorgerson*, 172 Wn.2d at 453. Indeed, the State bears the whole burden of proving each element of the case beyond a reasonable doubt. *State v. Cleveland*, 58 Wn. App. 634, 647, 794 P.2d 546 (1990).

The last-noted issue is the first presented by Mr. Austin. He contends that the first two comments of the prosecutor detailed earlier expressly stated that the defense had a burden of proof. To the extent there was any error, it was corrected.

The prosecutor, talking about Mr. Austin's ability to understand the interrogation, stated that the defendant was an articulate man of average intelligence and he had "presented no evidence, whatsoever, that he, in particular" when a defense objection was presented. The prosecutor apologized and withdrew the incomplete statement, which the court also struck from the record. This

10

statement was not so prejudicial that it was beyond all cure. Defense counsel timely objected, the prosecutor apologized, and the court struck the statement. We can think of little else that could be done to correct the error.

In rebuttal, the prosecutor made a similar error when talking about the defendant's statement to law enforcement, stating that Mr. Austin need "to prove two separate things." Before the defense could even object, the prosecutor struck his own statement and twice told the jury that Mr. Austin did not have to prove anything, but the State had to "prove everything." Once again, this passing error was promptly addressed by the offending party.[2]

Mr. Austin also contends that the prosecutor improperly appealed to jury passion by commenting on Dr. Connolly and asking "are we supposed to let nine-year-old girls be raped?" The later rhetorical statement was clearly improper, immediately objected to by defense counsel, and the judge instructed the jury to disregard the remark. In these circumstances, the error in that statement was cured by the trial court. *Thorgerson*, 172 Wn.2d at 452.

There was no challenge to the comments concerning Dr. Connolly at trial, which means that Mr. Austin has to show that they were so egregious that they

---

[2] We suggest that the prosecutor use a more neutral, evidence focused statement when discussing whether the evidence supports a defense theory. It is simpler and far less risky to state that "the evidence does not establish" a particular proposition than it is to say that the defense has not done so.

11

could not have been cured by a timely objection. *Id*. at 443. He cannot meet that

burden here. It is very doubtful that there was any error. The prosecutor called

the expert "a nice lady" and suggested that theoretical approaches to interrogation

do not translate well to the reality of actual practice. The statement did not

disparage the expert or her work, but merely questioned the practicality of treating

the issue as an academic exercise. The failure to object is strong evidence that

defense counsel did not see the argument as improper. *State v. Swan*, 114 Wn.2d

613, 661, 790 P.2d 610 (1990). We agree that is likely the case here.

Nonetheless, if there was an improper statement here, it clearly was not so

egregious that it was beyond cure from a timely objection. This claim fails.

The trial court and the parties properly dealt with the prosecutor's few

erroneous statements. Mr. Austin has not met his burden of establishing

prejudicial misconduct.

*Mistrial*

Mr. Austin next argues that the court erred in denying his motion for a

mistrial. The "irregularity" in the transcripts was properly dealt with by the trial

court. Once again, there was no abuse of discretion in denying the motion.

When inadmissible testimony is put before the jury, the trial court should

declare a mistrial if the irregularity, in light of all of the evidence in the trial, so

tainted the proceedings that the defendant was deprived of a fair trial. *State v.*

*Weber*, 99 Wn.2d 158, 164, 659 P.2d 1102 (1983). A ruling on a motion for a mistrial is reviewed for abuse of discretion. *Id.* at 166.

Here, the prosecutor appeared to catch his error before any member of the jury was likely to have seen that there were notes in the margin of upcoming pages in the transcript. The trial court noted that it was unlikely that the jurors saw the notes and that it also was unlikely any of the notes would have prejudiced the defense in view of their innocuous nature and the large transcript. The court then concluded under the totality of the circumstances that the mistake did not expose the defendant to unfair prejudice and instructed the jury to disregard any markings in the transcript.

These were very tenable reasons for the trial judge to take the actions he did. It was likely that no juror saw the notes and they were of no consequence to the case. Under the circumstances, there was no reason to order a new trial. If there was an error, it was corrected by the trial court. There was not such a significant error that only a new trial could remedy the problem.

The court did not err in denying the mistrial.

*Financial Obligations*

The trial court imposed a total of $3,910 in LFOs, with at least $2,860 (services fees of $2,410 and appointed attorney fees of $450) in the discretionary fee category. Mr. Austin requests that we remand his case for another hearing into

13

his ability to pay these obligations. Because the trial court was familiar with his work history, we decline the request.

This court reviews the trial court's determination concerning a defendant's resources and ability to pay under the clearly erroneous standard. *State v. Bertrand*, 165 Wn. App. 393, 404, 267 P.3d 511 (2011). A decision on whether to impose fees is reviewed for abuse of discretion. *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116 (1991). RCW 10.01.160(3) provides that, "the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." This inquiry is only required for *discretionary* LFOs. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013) (mandatory fees, which include victim restitution, victim assessments, DNA[3] fees, and criminal filing fees, operate according to the current sentencing scheme and without the court's discretion by legislative design.). Trial courts are not required to enter formal, specific findings. *Id.* at 105.

As has been noted in many places, the question of the trial court's compliance with its longstanding statutory obligation to inquire into an offender's ability to pay for court costs before assessing them has been the subject of much appellate litigation over the past several years. The statute is straightforward. The

---

[3] Deoxyribonucleic acid.

court shall not impose costs "unless the defendant is or will be able to pay them." RCW 10.01.160(3). Nonetheless, the subject often is not raised at sentencing even though the defendant is the best, and often only, source of the information the trial court needs. It is this fact, in conjunction with the statutory basis of the trial court's obligation, that has triggered the litigation explosion on this topic. If the defendant does not address the LFO issue in the trial court, appellate courts are not required to consider the claim on appeal because it arises from a statute rather than the constitution. RAP 2.5(a); *State v. Blazina*, 182 Wn.2d 827, 832-834, 344 P.3d 680 (2015). Appellate courts do retain discretion to decide if they will hear an LFO claim for the first time on appeal. *Blazina*, 182 Wn.2d at 834-835.

Mr. Austin argues this as a *Blazina*-type error preservation issue. However, we see this case more as a *Betrand*-type evidentiary sufficiency claim rather than as an error preservation problem. Mr. Austin testified at trial concerning his education and work history. He generally had been employed at various forms of labor since leaving high school. While his career does not suggest that he has earned high wages, it does appear that he has been able to find steady work.

There was no searching inquiry into the defendant's finances or bank records. The trial court went through each of the LFOs it was assessing on the record, but Mr. Austin made no objection to them and did not claim an inability to pay or otherwise raise any issue concerning his finances. Under these

15

circumstances, while *Blazina* contemplates a more thorough inquiry, we think the defendant's work history provided the trial judge with a basis for concluding that he had an ability to pay the assessed obligations.[4]

Although we expect that a more thorough inquiry will be made in post-*Blazina* sentencings, the information presented at trial provided a tenable basis for imposing the LFOs. There was no abuse of discretion.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, J.

Lawrence-Berrey, J.

---

[4] He retains the right to seek remission of his obligations at any time if he had financial information he failed to present to the trial court. RCW 10.01.160(4).