IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 79381-1-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KEVIN LAURENCE LEWIS, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

HAZELRIGG, J. — Kevin L. Lewis was convicted at trial of domestic violence related offenses: two counts of assault in the second degree, both subject to an aggravating factor that the offenses were part of an ongoing pattern of abuse of the victim. Lewis argues that the court erred in not granting his motion for a mistrial after a witness violated a pretrial order and that his counsel was ineffective. He also raises double jeopardy and ineffective assistance of counsel claims in a Statement of Additional Grounds. We disagree and affirm.

FACTS

Kevin L. Lewis was charged with six counts of domestic violence related offenses—which include two counts of assault in the second degree, telephone harassment, two counts of gross misdemeanor violation of a no contact order, and assault in the fourth degree. The three felony counts, assault in the second degree

and telephone harassment, included a domestic violence aggravating factor alleging that the offenses were part of an ongoing pattern of abuse of the victim.

The charges arose out of several incidents between Kevin and Amanda Lewis.[1] The couple was in the process of separation and later, a dissolution. In November 2016, Amanda was sleeping at home when Kevin, who had been staying elsewhere, woke her up early in the morning. Kevin asked to look at Amanda's phone, but she refused. Kevin then punched Amanda in the nose, and she let him look at her phone. Amanda also testified that she believed Kevin hit her in the eye and jaw areas which caused her to seek treatment for her injuries. Amanda moved out of the family home after this incident.

On June 18, 2017, Kevin called Amanda to discuss their children and try to convince her to return home. Kevin told her that if she did not return, he would get a divorce, seek custody of the children, and if he was not successful in obtaining custody, would kill her. Amanda reported the threat to the police.

Just before midnight on June 21, 2017, Amanda arrived at her new residence. She was parked in the driveway looking at her phone for a few minutes. As she started to exit the vehicle, she was hit on the head and was hit many more times before the assault suddenly stopped. Amanda eventually shut her car door and called 911. She was unable to identify the assailant, but suspected Kevin and gave police his contact information. An officer went to Kevin's residence and while the officer was looking the vehicle in his driveway, Kevin arrived on a bicycle. The officer asked if he had been in the vicinity of Amanda's home that night, to which

---

[1] For clarity, Kevin Lewis and Amanda Lewis will be referred to individually by their first names. No disrespect is intended.

he replied that he had not and had only been gone about thirty minutes. A few days after the attack Amanda posted about her injuries and the incident on Facebook. Amanda also sought a protection order against Kevin.

Amanda filed a petition for a no contact order in Snohomish County Superior Court on June 28, 2017 and was granted a temporary order. Kevin and Amanda were present in court on July 12, 2017 when a permanent order was entered after a hearing was held on Amanda's petition. One of the misdemeanor violation of no contact order charges stemmed from an interaction in the courthouse, prior to the issuance of the final order, while the temporary order was still in effect. Kevin filed for divorce later that summer. The criminal case at issue here was formally filed in Snohomish County Superior Court on April 2, 2018.

Abigail Ruggles had been a live-in nanny for the couple. Ruggles testified at trial that she moved out of the couple's home in June 2017 and into Amanda's new residence. She further testified that she returned to the old home, where Kevin was still living, to retrieve some of her things. Ruggles stated that she and Kevin got into a verbal altercation, and Kevin pointed his fingers like a gun at her. Ruggles also testified that Kevin tried to communicate with Amanda through her.

Jesus Rosales, a distant relative of Amanda, knew Kevin based on their marriage. Rosales testified that he ran into Kevin the night of June 20, 2017, in the parking lot outside of a casino. This was the same night Amanda had been assaulted outside of her car. He further testified that he learned through social media that "there was a murder on our side of the family." This reference likely

was to Amanda's sister who had been killed on September 20, 2017.[2] There had been a ruling to exclude any reference to the murder based on an unopposed pretrial motion. Kevin objected to Rosales' statement based on relevance and the jury was excused. Kevin then moved for a mistrial, but the motion was denied. Rosales again took the stand and continued his testimony, explaining that he misspoke earlier and meant an assault. He specifically clarified that he was referring to the attack on Amanda while exiting her vehicle.

At the close of the State's case, the defense successfully moved to dismiss the charge of telephonic harassment. The jury convicted Kevin on both counts of assault in the second degree and the jury found that both assaults were aggravated domestic violence offenses. The jury acquitted him of the gross misdemeanor violation of a no contact order charge in Count IV. Kevin was sentenced to 38 months total confinement, including mandatory consecutive time on enhancements based on the aggravators. The remaining charges of gross misdemeanor violation of a no contact order and assault in the fourth degree had previously been severed from the other four counts and were dismissed after the trial at issue here. Kevin timely appealed.

## ANALYSIS

I.    Denial of Defense Motion for Mistrial

Kevin first challenges the court's denial of his motion for a mistrial after a witness violated a pretrial ruling excluding any reference to the murder of the

---

[2] One document in the record references the year as being 2018, however all other references within the record indicate 2017, which appears to be the proper date. This discrepancy does not affect our analysis.

victim's sister. Rosales' testimony included a statement about learning of "a murder on our side of the family" on social media, which directly violated the court's pretrial ruling on the matter. Defense counsel objected, which was sustained. The judge then sua sponte issued an instruction to the jury to disregard the statements as irrelevant and nonresponsive to questioning. The State requested a recess, during which the parties took up the issue outside the presence of the jury and defense formally moved for a mistrial. The court denied the motion, but offered to reiterate the instruction to the jury to avoid conducting any research or otherwise seeking out information related to the case. The judge reminded the jury of this instruction at the conclusion of Rosales' testimony.

We review a trial court's denial of a motion for a mistrial for abuse of discretion. State v. Escalona, 49 Wn. App. 251, 254-55, 742 P.2d 190 (1987). We find abuse of discretion only when no reasonable judge would have reached the same conclusion. State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989). "[T]he court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." State v. Lewis, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). "The trial judge is best suited to judge the prejudice of a statement." Id.

In reviewing a trial court's ruling on a motion for a mistrial, we utilize a three-part test to determine whether the petitioner was so prejudiced as to require a new trial. State v. Weber, 99 Wn.2d 158, 165-66, 659 P.2d 1102 (1983). We consider 1) the seriousness of the irregularity, 2) whether the statement at issue was cumulative of other properly admitted evidence, and 3) whether the irregularity was

able to be cured by an instruction to disregard the improper testimony, which the jury is presumed to follow. Id.

The seriousness of Rosales' remark that he had become aware of a murder on the victim's side of the family was significant since it directly violated the agreed pretrial order to exclude any testimony on this subject. Beyond the violation of the motion in limine, this testimony regarding a murder was factually inaccurate and unrelated to the case at hand.

The second factor, whether the statement in question was cumulative of other proper evidence, is informative. This statement by Rosales was not cumulative as the jury did not hear about the murder of Amanda's sister at any other point during the trial. The court characterized the statement as irrelevant and non-responsive to questioning, but the record suggests it was also inaccurate. The trial transcript demonstrates that Rosales was expected to, and eventually did, testify that he learned of the assault on Amanda from her social media post. After the motion for a mistrial was addressed, Rosales returned to the stand and corrected his earlier testimony, explaining that he misspoke and meant to say assault. This corrective testimony was in line with what the jury previously heard in opening argument from the State about a Facebook post by Amanda. The jury was later provided more testimony from Amanda regarding that post. Here, the improper statement was not cumulative.

The final step in our analysis is to determine if the testimony by Rosales about the murder could be properly cured through instruction. We believe it was. The court immediately provided a curative instruction, striking the testimony and

explaining to the jury that it was irrelevant and non-responsive. At the conclusion of Rosales' testimony, the court reiterated the standard instruction prohibiting jurors from seeking out independent information about matters discussed at trial. Kevin offers no reason that we should overcome the presumption that jurors follow the court's instructions. See State v. Grisby, 97 Wn.2d 493, 509, 647 P.2d 6 (1982). We find here that the court's instruction was sufficient to cure the irregularity, particularly in light of Rosales' correction as to the testimony.

Though any violation of a pretrial order on motions in limine is serious, here the violation was promptly and properly cured. The trial court did not abuse its discretion in denying Kevin's motion for a mistrial.

II.    Ineffective Assistance of Counsel

Kevin argues he was denied effective representation on two grounds. First, based on his attorney's failure to object to testimony by Ruggles about prior assaults, in violation of a ruling on a motion in limine. Second, because his attorney failed to request a limiting instruction that Kevin's interactions with Ruggles were only to be considered to establish the aggravating factor that the jury was to decide.

The accused has a right to assistance of counsel under both the federal and state constitutions. U.S. Const. amend. VI; Wash. Constitution art. 1, § 22. "A claim that counsel was ineffective is a mixed question of law and fact that we review de novo." State v. Jones, 183 Wn.2d 327, 338, 352 P.3d 776 (2015). To prevail on a claim for ineffective assistance, counsel's performance must have been deficient, and the deficient performance must have resulted in prejudice.

State v. Grier, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011); Strickland v. Wash., 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "The threshold for the deficient performance prong is high, given the deference afforded to decisions of defense counsel in the course of representation." Grier, 171 Wn.2d at 33. Performance is deficient if it falls "below an objective standard of reasonableness based on consideration of all the circumstances." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). We engage in a strong presumption that counsel was effective. Id. at 335.

As to Kevin's first ground for his ineffective assistance claim, he argues the testimony by Ruggles was "extensive" and described an "assault." Our review of the record demonstrates that her testimony described a charged interaction between former roommates in the context of a relationship ending. We do not find counsel's failure to object to be deficient as it may well have been strategic. The portion of testimony identified by defense is Ruggles' description of Kevin cursing at her, pointing his finger at her like a gun, and trying to get her to tell Amanda something. "The decision of when or whether to object is a classic example of trial tactics." State v. Madison, 53 Wn. App. 754, 763, 770 P.2d 662 (1989).

Here, Ruggles' testimony was not at odds with the defense theory of the case, which focused on the theme of a failing marriage where every party involved was acting badly and with high emotions. It is noteworthy that defense declined to cross-examine Ruggles, which further suggests that there was a strategic reason behind the decision not to object. During closing, defense counsel insinuated that Ruggles may have fueled the increasing tension between Kevin and Amanda by

telling Amanda about this hostile interaction. We do not find deficient performance and our ineffective assistance inquiry ends there.

The second ground upon which Kevin relies is counsel's failure to request a limiting instruction seeking to restrict consideration of Ruggles' testimony only as to the domestic violence aggravating factor. "But prior cases have established that failure to request a limiting instruction for evidence admitted under ER 404(b) may be a legitimate tactical decision not to reemphasize damaging evidence." State v. Yarbrough, 151 Wn. App. 66, 90, 210 P.3d 1029 (2009).

Given the defense theory of the case and the strategic value of avoiding calling the jury's attention to the Ruggles incident, we are unable to overcome the presumption of effectiveness of trial counsel to find that this was not a tactical decision. The decision not to seek a limiting instruction could serve two valid defense purposes deemphasize Ruggles' testimony that Kevin sought to use her for prohibited third-party communication with Amanda in violation of the no contact order and allow for argument as to Ruggles' role in the escalating divorce conflict. Kevin has failed to overcome the presumption of effective representation under State v. McFarland, 127 Wn.2d 322.

III.     Statement of Additional Grounds

Kevin submits a Statement of Additional Grounds that identifies four other issues for review. Three of them, Additional Grounds 1, 3 and 4, center on the argument that the civil protection order proceeding in which Amanda sought a no contact order and the criminal case underlying this appeal constitute double

jeopardy. We construe Additional Ground 2 as a claim of ineffective assistance of counsel for failing to seek a jury instruction on self-defense.

Kevin identifies his claims and offers argument and legal authority, but does not cite to the record on appeal. While citations are not required for review, "the appellate court is not obligated to search the record in support of claims made in a defendant's statement of additional grounds for review." RAP 10.10(c). Further, as to the double jeopardy assertion, the record of the civil no contact order proceedings is not before us for review, so we decline to reach those issues.

The test for examining claims of ineffective assistance of counsel is discussed at length in Section II of this opinion. As to this specific challenge to counsel's performance, case law is well settled that the decision to pursue a particular trial strategy is one left squarely within the discretion of trial counsel. In re Pers. Restraint of Stenson, 142 Wn.2d 710, 733, 16 P.3d 1 (2001); See State v. Thompson, 169 Wn. App. 436, 459-60, 290 P.3d 996 (2012); See also State v. Piche, 71 Wn.2d 583, 590, 430 P.2d 522 (1967). In order to show "ineffective assistance of counsel based on the failure of trial counsel to request a jury instruction, this court must find that [the defendant] was entitled to the instruction." State v. Johnston, 143 Wn. App. 1, 21, 177 P.3d 1127 (2007). "Generally, a defendant is entitled to an instruction on self-defense if there is some evidence demonstrating self-defense." State v. Werner, 170 Wn.2d 333, 336-37, 241 P.3d 410 (2010). The record here does not demonstrate self-defense. As such, Kevin fails to establish that counsel's performance was deficient and his claim of ineffective assistance on this basis fails.

Affirmed.

WE CONCUR:

Leach, J.

Appelwick, J.