IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　Respondent,<br><br>　　　v.<br><br>MICHAEL ANGELO PAPUZZA,<br><br>　　　　　Appellant. | No. 85826-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Michael Angelo Papuzza appeals his convictions for possession of methamphetamine with intent to deliver and possession of fentanyl with intent to deliver. Papuzza argues that he was deprived of his constitutional right to effective assistance of counsel because his trial counsel failed to move for a mistrial when a prosecution witness referenced evidence that had previously been excluded. We hold that there was no constitutional violation and affirm Papuzza's conviction.

FACTS

On January 6, 2023, Papuzza was on community custody as a result of a prior conviction. On that day, Papuzza's community custody officer (CCO) Christopher Knight was out in the field when he noticed Papuzza's vehicle parked at the Welcome Everett Inn. Knight knew that there was a warrant out for Papuzza's arrest for failing two consecutive drug tests and proceeded to approach Papuzza's vehicle. As Knight and his partner approached, Papuzza

exited his vehicle and began to flee down the sidewalk. After Knight called for backup, he and other officers located Papuzza hiding behind a bush and arrested him pursuant to the outstanding warrant.

Following his arrest, Knight inquired if Papuzza needed anything from his vehicle to be taken with him to the jail. Papuzza requested his phone and his wallet and directed Knight to check for these items in the passenger seat, where Knight located and retrieved Papuzza's phone, but not his wallet. Papuzza then directed Knight to check for his wallet in the center console. Knight asked, "I'm not going to find anything I shouldn't find?" and Papuzza answered "no." Knight then opened up the console and there discovered Papuzza's wallet and a bag containing a "clear, crystalline-like substance" that, based on his training, he believed to be methamphetamine.

After confirming that Papuzza's sentence for his prior conviction included a condition not to possess controlled substances, another CCO authorized a search of Papuzza's vehicle. The search yielded numerous suspected fentanyl pills and various other drug paraphernalia. Knight then sought to search Papuzza's phone for additional evidence of violations of his community custody conditions prohibiting drug usage or possession. Papuzza gave Knight permission to search his cell phone, wherein Knight found several text messages from "Lori," "Vic," and "Krystale," which appeared to discuss "blues"[1] and "pills." Knight took a photograph of one message from "Lori" to Papuzza that states,

---

[1] CCO Knight testified that "blues" is a colloquial name for fentanyl.

2

"Michael, do you have any blues?" However, Knight did not take any other photographs of the additional messages between Papuzza and "Lori," "Vic," or "Krystale."

Prior to trial, Papuzza filed a motion to exclude evidence about additional text messages between "Lori" and Papuzza as well as all text messages between Papuzza and "Vic" and "Krystale." Initially, the trial court denied the motion to exclude, finding that the text messages were not testimonial and that Crawford[2] did not apply. However, Papuzza objected based on the best evidence rule,[3] because the messages were recorded statements, and the rule of completeness, ER 106,[4] because the messages failed to provide a complete picture of the conversation. The trial court admitted the message from "Lori" asking "Michael, do you have any blues?" pursuant to the best evidence rule but excluded all other testimony about any of the other messages.

At trial, Knight was called to testify about Papuzza's arrest and the additional community custody violations. While responding to a question from the prosecutor about what he found on Papuzza's phone, Knight stated, "We found

---

[2] In Crawford v. Washington, the U.S. Supreme Court held that the Sixth Amendment requires that when an unavailable witness makes statements that are testimonial in nature, for the statements to be admitted, the defendant must have had a prior opportunity to cross-examine the witness. 541 U.S. 36, 54, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[3] The "best evidence" rule requires the use of an original writing, recording, or photograph to prove the content of that writing, recording, or photograph. ER 1002. Evidence other than the original is admissible if all originals are destroyed or lost, cannot be obtained through judicial process, were under control of the party against whom it was offered and that party was on notice that it would be required at the hearing and that party failed to produce, or the evidence is about a collateral matter. ER 1004.

[4] ER 106, the rule of "completeness," provides that when one party introduces a recorded statement, "an adverse party may require the party at that time to introduce any other part, any other writing or recorded statement, which ought in fairness to be considered contemporaneously with it."

text messages – numerous text messages with what appeared to be the buying and selling—" and Papuzza interrupted with an objection. The trial court dismissed the jurors for recess. Outside the jury's presence, Papuzza argued that Knight's statement about "numerous text messages about the buying and selling of drugs" was unfairly prejudicial given the trial court's previous ruling to exclude any testimony as to the other messages. The prosecutor offered to strike Knight's response and to pivot to focus on the admitted text message from "Lori," to which Papuzza replied, "I think that is a very appropriate response. It doesn't draw too much attention, and gets us right back on track." The trial court agreed to strike Knight's response. Immediately after bringing back the jury, the court stated that it was sustaining the objection and instructed the jury "to disregard the officer's last testimony with regard to text messages."

There was no other testimony about the excluded messages during the remainder of the trial. The jury returned a verdict of guilty on both counts of possession of a controlled substance with intent to manufacture or deliver. Papuzza timely appeals.

ANALYSIS

Papuzza claims he was denied effective assistance of counsel because his trial counsel failed to seek a mistrial when the prosecution's witness mentioned "numerous text messages" despite the trial court's prior ruling to exclude such testimony. Further, he claims that merely striking that testimony was ineffective to overcome the prejudice it caused.

I.  Ineffective Assistance of Counsel

A criminal defendant has a constitutional right to effective counsel. U.S. CONST. amend. VI; WASH. CONST. art. 1, § 22. A defendant is deprived of the right to effective assistance of counsel when (1) counsel's conduct falls below the objective standard of care and (2) counsel's deficient conduct prejudiced the outcome. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The defendant must prove both prongs of the Strickland test. State v. Jeffries, 105 Wn.2d 398, 418, 717 P.2d 722 (1986).

"Courts engage in a strong presumption counsel's representation was effective." State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Both prongs of the Strickland test require the defendant to overcome this strong presumption. State v. Bertrand, 3 Wn.3d 116, 123, 546 P.3d 1020 (2024). The court need not consider both deficiency and prejudice if a petitioner fails to prove one. In re Pers. Restraint of Crace, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012).

The Strickland test is not applied mechanically but rather with focus on whether the proceedings were fundamentally fair. Bertrand, 3 Wn.3d at 124. On appeal, an ineffective assistance of counsel claim is reviewed de novo. State v. Backemeyer, 5 Wn. App. 2d 841, 848, 428 P.3d 366 (2018).

A.  Deficient Performance

Papuzza contends that Knight's testimony about "numerous text messages" constitutes a trial irregularity because the jury heard something it should not have. He further argues that because this irregularity was serious, his

trial counsel's failure to move for mistrial based on the testimony constituted ineffective representation.

To show deficient performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness in light of all the circumstances. Strickland, 466 U.S. at 688. Papuzza asserts that "[n]o reasonable attorney would have failed to move for a mistrial," because the errant testimony was "some of the strongest evidence that Papuzza was dealing drugs, [which was] the only contested issue at trial." Further, he asserts that there is no "reasonable strategic basis" for his trial counsel's failure to move for a mistrial. In response, the State asserts that Papuzza has not met his burden as to the performance prong because (1) he has cannot overcome the strong presumption that counsel was effective when the choice not to move for mistrial was a legitimate tactical decision and (2) the trial court was in the best position to cure any trial irregularities and did so by promptly giving a curative instruction.

Usually, " '[d]eficient performance is not shown by matters that go to trial strategy or tactics.' " State v. Studd, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999) (quoting State v. Hendrickson, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996)). Counsel is afforded "wide latitude. . . in making tactical decisions." Strickland, 466 U.S. at 689. The State argues that whether to move for a mistrial was a tactical decision that rested with his counsel's evaluation of the impact the

statement had on the case.[5] As the State points out, Papuzza's trial counsel objected to Knight's testimony at issue before he completed his answer. This indicates that counsel recognized there was an error. And significantly, after objecting, Papuzza's trial counsel explicitly agreed to the proposed resolution of striking Knight's statement and the State's refocusing its questioning on only the admitted message, stating, "I think that is a very appropriate response. It doesn't draw too much attention, and gets us right back on track." It was reasonable for Papuzza's counsel to decide that because he objected before Knight revealed any content from the messages, and the trial court promptly instructed the jury to disregard the testimony, he did not need to move for a mistrial.

Counsel has "wide latitude" to make strategic decisions such as the one challenged here, agreeing to a curative instruction rather than moving for mistrial. Strickland, 466 U.S. at 689. Given this latitude, Papuzza fails to overcome the strong presumption that counsel's performance was effective.

B. Prejudice

Though Papuzza cannot establish the first Strickland prong, we address his arguments as to prejudice as an alternative basis for why his claim fails. Papuzza contends that he was prejudiced by his counsel's failure to move for mistrial because the trial court "would have been obligated to grant the motion." " 'A mistrial should be granted only when the defendant has been so prejudiced

---

[5] The State points to an unpublished case for the proposition that the decision "to move for a mistrial necessarily is a strategic decision. Defense counsel may not have wanted a mistrial for various reasons." In re Pers. Response of Curry, No. 54033-9-II, slip op. at 12 (Wash. Ct. App. June 15, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2054033-9-II%20Unpublished%20Opinion.pdf. Under GR 14.1(a), Curry has no precedential value.

that nothing short of a new trial can insure that defendant will be tried fairly.' " State v. Gaines, 194 Wn. App. 892, 897, 380 P.3d 540 (2016) (quoting State v. Gilcrist, 91 Wn.2d 603, 612, 590 P.2d 809 (1979)).

That is hardly the situation here. As the State notes, trial courts have "wide discretion to cure trial irregularities." State v. Post, 118 Wn.2d 596, 620, 826 P.2d 172 (1992) (trial court acted within its discretion by denying the defendant's motion for a new trial after it issued a curative instruction regarding a singular improper statement at trial). A court evaluates a trial irregularity's potential impact on the jury by looking at (1) the seriousness of the irregularity, (2) the cumulative nature of the statement amidst other properly admitted evidence, and (3) the impact a curative instruction would have. State v. Weber, 99 Wn.2d 158, 165-66, 659 P.2d 1102 (1983). Papuzza suggests under the Weber test, the court would have granted a motion for mistrial had his counsel filed such a motion. We disagree.

Papuzza compares his case to State v. Escalona, in which we held that the trial court erred by denying the defendant's motion for a mistrial. 49 Wn. App. 251, 742 P.2d 190 (1987). Escalona was charged with second degree assault while armed with a deadly weapon, a knife. The victim violated a pretrial ruling on a motion in limine by testifying that the defendant "already has a record and had [previously] stabbed someone." Id. at 253. There, the court held that the improper testimony was "extremely serious," noting that our evidence rules "embody an express policy against the admission of evidence of prior crimes except in very

8

limited circumstances and for limited purposes," and the reference to Escalona's record became "particularly serious" considering the "paucity of credible evidence" against the defendant. Id. at 255. By contrast, here, Knight's statement about the "numerous text messages" did not reveal any of the content of the messages and was the sole reference to the excluded messages throughout the whole trial.

Knight's testimony was not cumulative of properly admitted evidence other than the message from "Lori." Papuzza thus argues that it "unfairly added significant weight to the prosecution's claims [that] Lori's message showed Papuzza was dealing drugs, even though Lori's message could be interpreted as a request for [a] shade[] of blue paint or 'blues' music." As to whether the court's instruction adequately quelled any prejudice, while "no instruction can 'remove the prejudicial impression created [by evidence that] is inherently prejudicial,' " Escalona, 49 Wn. App. at 255 (quoting State v. Miles, 73 Wn.2d 67, 71, 436 P.2d 198 (1968)), here, the evidence at issue was much less prejudicial than the evidence in Escalona. Given the trial court's wide discretion to determine that striking the testimony was sufficient to dispel any potential prejudice, Papuzza cannot show that his counsel's failure to seek a mistrial was prejudicial.

Papuzza also asserts that because the trial court took a recess to consider his counsel's objection to Knight's testimony, the jurors had time to consider the testimony before being told to disregard it, which prejudiced him. But immediately after the recess, the court instructed the jury to disregard the improper testimony.

9

This is unlike the case Papuzza relies on, State v. Gogo, in which the trial court waited days before addressing improper testimony, during which time four witnesses testified, so "the improper testimony would have made such an indelible impression on the jury that no instruction to disregard it could mitigate its prejudicial effect." 29 Wn. App. 2d 107, 116, 540 P.3d 150 (2023). Further, in Gogo, the court did not ultimately provide a curative instruction, but rather, merely told the jury the testimony at issue was "hindered by" the witness's inability to clearly hear the prosecutor's questions, which was "a reason that an objective observer would know is false." Id. at 117. By contrast, here, immediately after the recess, the court instructed the jury "to disregard the officer's last testimony with regard to text messages." We presume that jurors follow the court's instructions. In re Pers. Restraint of Phelps, 190 Wn.2d 155, 172, 410 P.3d 1142 (2018).

The court promptly addressed the objection to Knight's testimony about the excluded messages with a curative instruction, so it is unlikely that a motion for mistrial would have succeeded. Thus, Papuzza fails to overcome the strong presumption that his counsel's failure to move for a mistrial caused him prejudice.

CONCLUSION

Because Papuzza cannot establish either deficient performance or prejudice, his claim of constitutionally ineffective assistance fails. Affirmed.

_Chung, J._

WE CONCUR:

_Bowman, J_     _Dwyer, J._