# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74100-4-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ALBERTO AVILA-CARDENAS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: August 21, 2017 |

SPEARMAN, J. — Alberto Avila-Cardenas[1] appeals his conviction for three counts of first degree murder. He contends that the trial court erred in denying his motion to strike the jury panel, denying his motion for a mistrial, admitting inadmissible evidence, and considering his lack of remorse at sentencing. He also argues that he received ineffective assistance of counsel and the trial was marred by prosecutorial misconduct. He raises several further arguments in a statement of additional grounds. Finding no error, we affirm.

## FACTS

Jesus Bejar-Avila, Yazmani Quezada-Ortiz, and Cristian Rangel were coworkers at Lake Union Wholesale Florists. The three men worked together on

---

[1] The appellant and several other persons involved in this case have two last names. In the record and briefing, they are inconsistently referred to by one last name, both last names without a hyphen, and both last names hyphenated. For consistency, we use both last names hyphenated throughout.

December 12, 2010. They did not return home from work and were not seen alive again. Family members reported the men's disappearance to police.

In the ensuing investigation, Avila-Cardenas became a person of interest. Pursuant to a warrant, police searched his home and found a 9 millimeter gun and ammunition. Avila-Cardenas's long term girlfriend, Guadalupe Miranda-Cruz, told police that Avila-Cardenas had brandished the weapon during an argument and fired a bullet into the grass in the backyard. Police recovered a 9 millimeter shell casing from the area she indicated.

A few months later, a worker found human remains on the grounds of a wholesale plant nursery. Police recovered three bodies and identified them as Bejar-Avila, Quezada-Ortiz, and Rangel. Police also recovered 9 millimeter shell casings from the site. Forensic testing determined that the bullet casings recovered from the crime scene matched the casing found in Avila-Cardenas's backyard. All of the casings had been fired by the gun found in Avila-Cardenas's home. Investigators found blood spatter in the barrel of the gun. Deoxyribonucleic acid (DNA) testing determined that the blood inside the gun was from Rangel.

In addition to Avila-Cardenas, police suspected that Alfredo Velez-Fombona and Clemente Benitez were involved in the crime. Cell phone records showed that, on the day the victims disappeared, the cell phones associated with Avila-Cardenas, Velez-Fombona, and Benitez all traveled from Avila-Cardenas's home to the area of Lake Union Wholesale Florists. All three cell phones then traveled to the vicinity of the nursery where the bodies were recovered.

No. 74100-4-I/3

Police arrested Avila-Cardenas and Velez-Fombona.[2] Velez-Fombona pleaded guilty to second degree murder. Avila-Cardenas went to trial and was convicted of three counts of first degree murder.

## DISCUSSION

Confrontation Clause

Avila-Cardenas appeals his conviction on several grounds. We first address his claim that the trial court violated his rights under the confrontation clause by admitting Velez-Fombona's guilty plea.

A criminal defendant has the right to confront the witnesses against him. U.S. CONST. amend. VI. Admitting the statement of a nontestifying codefendant violates the confrontation clause if the statement facially incriminates the defendant. State v. Fisher, 185 Wn.2d 836, 842, 374 P.3d 1185 (2016) (citing Richardson v. Marsh, 481 U.S. 200, 211, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987)). A statement facially incriminates the defendant if it names him or if, from the statement, the jury could infer that it refers to the defendant even if it were "the very first item introduced at trial." Gray v. Maryland, 523 U.S. 185, 196, 118 S. Ct. 1151, 140 L. Ed. 2d 294 (1998)). On the other hand, where a statement does not refer to the defendant and is only incriminating when linked to evidence presented at trial, admission of the statement does not violate the confrontation clause. Id. (citing Richardson, 481 U.S. at 208).

---

[2] Police could not locate Benitez and he remained at large.

3

In this case, Miranda-Cruz testified that, on the day the men went missing, Avila-Cardenas left the house in a beige Yukon with Oregon plates. Detective Chris Johnson of the King County Sheriff's office, testified that police identified Velez-Fombona as the driver of the Yukon. In cross examination, defense counsel and Johnson had the following exchange:

> Q. And there was some testimony, I believe, some through you, some through other people, that Clemente [Benitez] became a suspect in this case; is that correct?
> A. Yes.
> Q. And so did Alfredo [Velez] Fombona?
> A. Yes.
> Q. In fact, Alfredo [Velez] Fombona pled guilty; is that correct?
> A. Yes.
> Q. He pled guilty to murder?
> A. Yes.

Verbatim Report of Proceedings (VRP) (7/16/15) at 1311.

At the end of cross examination, the State asked to introduce Velez-Fombona's plea statement. The prosecutor argued that Avila-Cardenas opened the door to the plea statement because the implication from cross examination was that Velez-Fombona, and not Avila-Cardenas, committed the murders. Defense counsel took the position that he merely elicited evidence of other suspects and did not open the door to Velez-Fombona's plea.

The court agreed with the State and admitted Velez-Fombona's statement in part. On redirect examination, Johnson read the following portion of Velez-Fombona's statement:

> 'On or about 12-12-10, I helped two men who kidnapped Jesus Bejar-Avila, Yazmani Quezada-Ortiz, and Cristian Alberto Rangel, in King County, Washington.

4

My role in the crime was to drive my car immediately behind the vehicle, the vehicle in which the three men were remaining so that no one was aware of their being restrained.

This restraint continued as I followed the car to the Rainier Nursery, in Kent, and my role ended. Jesus Bejar-Avila, Yazmani Quezada-Ortiz, and Cristian Alberto Rangel were then killed by the men. I was aware that the other two men were armed with guns.'

Id. at 1334.

Avila-Cardenas contends this was error. He asserts that it was obvious to the jury that he was one of the two men referred to in Velez-Fombona's plea statement and the statement thus violated his rights under the confrontation clause. The State contends that the plea statement does not facially implicate Avila-Cardenas and so did not violate the confrontation clause.

Fisher is instructive. In that case, Fisher and Trosclair were tried jointly. Fisher, 185 Wn.2d at 839. Fisher made out-of-court statements that incriminated herself, Trosclair, a man named Steele, and a "man from California." Id. at 840. The trial court admitted a redacted version of Fisher's statement that referred to Trosclair as "'the first guy.'" Id. On appeal, the redaction was held insufficient. Id. at 847. The statement indicated that four people committed the crime and that Fisher, Steele, and "the first guy" had been arrested but "the man from California" had not. Id. at 846-47. Steele was obviously not the name of Fisher's codefendant. Id. at 847. And the man from California, having not been arrested, was obviously not present in the courtroom. Thus, from a process of elimination, the jury could quite easily discern from the statement alone that "the first guy" referred to Trosclair. Id. The Fisher court held that the statement would

5

incriminate Trosclair even if it were "'the very first item introduced at trial.'" Id. at 846 (quoting Gray, 523 U.S. at 196). Admitting the statement thus amounted to constitutional error. Id. at 847.

In this case, Avila-Cardenas was tried separately. Velez-Fombona's plea states that he "helped two men," "the other two men" were armed, and the victims were killed by "the men." CP at 419; VRP (7/16/17) at 1334. Unlike the statement in Fisher, in this case the statement alone provides no information allowing the jury to infer that Avila-Cardenas was one of the "two men." If the statement were "the very first item introduced at trial," so that the jury heard it without any other evidence, it would not incriminate Avila-Cardenas. Fisher, 185 Wn.2d at 846 (quoting Gray, 523 U.S. at 196). Because the statement only became incriminating when linked with evidence introduced at trial, its admission did not violate the confrontation clause. See Gray, 523 U.S. at 196.

Avila-Cardenas contends, however, that this case is analogous to Fisher and requires the same result. He asserts that, from the evidence introduced prior to Velez-Fombona's statement, the jury knew there were three suspects and could thus immediately infer that the statement referred to Avila-Cardenas. The argument is unpersuasive because it fails to recognize that the test is whether the statement itself, apart from evidence introduced at trial, creates the inference that the defendant was involved.

Avila-Cardenas also relies on State v. Vincent, 131 Wn. App. 147, 120 P.3d 120 (2005). In that case, two codefendants were tried jointly. Vincent, 131

Wn. App. at 149. The trial court admitted statements from one codefendant indicating that he committed the crime with one "other guy." Id. at 154. Because there were two participants in the crime and two codefendants, we held that "the only reasonable inference the jury could have drawn" was that the "other guy" was the second codefendant. Id.

Avila-Cardenas asserts that this case is analogous to Vincent because, here, "there were exactly three codefendants and Velez[-Fombona]'s statement referred to exactly three accomplices." Reply Br. at 7. But Avila-Cardenas was tried separately. The case is distinguishable.[3]

Moreover, even if, as Avila-Cardenas asserts, the statement was facially incriminating, the error was harmless. A confrontation clause violation is harmless if the appellate court is convinced beyond a reasonable doubt that the jury would have reached the same result in the absence of the error. Fisher, 185 Wn.2d at 847. "The test is whether the untainted evidence was so overwhelming that it necessarily leads to a finding of guilt." Id.

The untainted evidence in this case is overwhelming. The bullet casings found at the murder scene and the bullet casing found at Avila-Cardenas's home were fired by the gun found in Avila-Cardenas's home. The gun contained blood spatter from one of the victims. Cell phone records placed Avila-Cardenas in the

---

[3] Avila-Cardenas also relies on State v. Vannoy, 25 Wn. App. 464, 610 P.2d 380 (1980). In that case, we considered whether the trial court erred in denying a motion for a separate trial. Vannoy, 25 Wn. App. at 471. We held that the statements of two codefendants implicated the third codefendant. Id. at 474. But the case is not helpful because it preceded Richardson and Gray, and thus, our analysis did not distinguish between inferences drawn from the statement itself and those drawn from linking the statement with evidence introduced at trial. Id. at 473-74.

location of the men's workplace and the site where their bodies were found at the relevant times. Given the untainted evidence, any confrontation clause error was harmless beyond a reasonable doubt.

Avila-Cardenas also contends that, by admitting the statement, the trial court precluded him from arguing that Velez-Fombona and Benitez were the true perpetrators and thus deprived him of the opportunity to present an other suspects defense. This argument is without merit. The plea statement did not prevent Avila-Cardenas from using an other suspects defense, it only prevented him from relying on Velez-Fombona's guilty plea to argue that defense.[4]

Motion to Strike the Venire

Avila-Cardenas next argues that the trial court erred in denying his motion to strike the venire. A challenge to the jury panel should only be sustained where the selection process did not substantially comply with statutory procedure or where the defendant demonstrates prejudice. State v. Roberts, 142 Wn.2d 471, 518-19, 14 P.3d 713 (2000) (citations omitted). We review the trial court's decision for abuse of discretion. Id. at 520.

Avila-Cardenas does not challenge the juror selection process on procedural grounds. He contends that he was prejudiced because comments by

---

[4] The State contends that, even if the statement was protected by the confrontation clause, Avila-Cardenas opened the door to its admission by eliciting the information that Velez-Fombona pleaded guilty to the murder. Washington courts have apparently not addressed the open door rule in the context of evidence protected by the confrontation clause. In light of our disposition of the confrontation clause error, we need not address the issue here.

one juror tainted the entire panel and the trial court therefore erred in denying his motion to strike the venire.

During general questioning by the court, Juror 61 stated that he had worked as a police officer. He expressed the opinion that the charges brought were generally true and stated that it might be difficult for him to apply the presumption of innocence. The State challenged Juror 61 for cause and he was struck. Avila-Cardenas, however, asserted that Juror 61's comments tainted the panel. He moved to dismiss the entire venire. The court denied the motion, noting that jurors often express similar sentiments during voir dire and the process is intended to weed out those persons who cannot be fair.

The court asked further questions about the jurors' experiences and how these might affect their ability to apply the presumption of innocence. The court gave the jurors the option of speaking privately, rather than in front of the entire venire. Juror 132 stated that he preferred to speak privately because he felt that sharing opinions publicly, as Juror 61 had done, "influences the whole audience." VRP (7/7/15) at 377. Juror 132 went on to explain that the presumption of innocence was difficult for him because, in his job as a school principal, he basically conducted trials every day to determine whether students had committed infractions. He stated that it was rare for a child who was 100 percent innocent to be brought to his office. Most of the time, the child had done "something." Id. Juror 132 stated that his own feelings about the presumption of innocence were similar to those expressed by Juror 61.

9

After questioning Juror 132, Avila-Cardenas renewed his motion to strike the entire panel, asserting that Juror 132's statements demonstrated that he had been affected by Juror 61. The court disagreed. The court stated that Juror 132 did not say that Juror 61 influenced his view, but that what Juror 61 said reflected his own concerns. The court denied the motion to strike the panel but stated that it would continue to question jurors about whether they had views similar to those expressed by Juror 61. In further questioning, the court identified and dismissed another juror who expressed that it might be difficult for her to be open minded.

Avila-Cardenas contends that Juror 132's statements demonstrate that Juror 61 infected other jurors with his bias. He asserts that the trial court compounded the prejudice by calling attention to Juror 61's remarks during later questioning. We disagree.

The trial court considered Juror 132's remarks and found no indication that he had been influenced by Juror 61. The record supports this finding. Avila-Cardenas points to nothing in the record indicating that any other juror was influenced by Juror 61. The trial court did not abuse its discretion in denying Avila-Cardenas's motion to strike the panel.[5]

---

[5] In support of his claim that the trial court erred in failing to strike the panel after Juror 61's remarks, Avila-Cardenas also appears to rely on CrR 7.5(a)(5). That rule provides as grounds for a new trial an "[i]rregularity in the proceedings of the court, jury or prosecution ... by which the defendant was prevented from having a fair trial." He urges us to review the trial court's decision under the trial irregularity test set out in State v. Weber, 99 Wn.2d 158, 164-66, 659 P.2d 1102 (1983). First, we note that Avila-Cardenas did not move for a mistrial or a new trial on this ground below. But even if the test is applicable, and assuming the juror's remarks to be an irregularity, the argument fails. "To determine whether a trial was fair, the court should look to the trial irregularity and determine whether it may have influenced the jury." Id. at 165. As discussed above, the record does not support Avila-Cardenas' claim that the juror's comment influenced the jury in any way. There was no error.

Ineffective Assistance of Counsel

Avila-Cardenas next argues that he received ineffective assistance of counsel because defense counsel led the jury to believe he would present evidence that he was unable to introduce.

To prevail in asserting ineffective assistance of counsel, an appellant must show that (1) counsel's representation was deficient and (2) he was prejudiced by the deficient performance. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). We may review these prongs in either order. In re Riley, 122 Wn.2d 772, 780, 863 P.2d 554 (1993). If the defendant fails to establish one prong, we need not consider the other. Id. Representation is deficient if it falls "below an objective standard of reasonableness. . . ." McFarland, 127 Wn.2d at 334. An appellant shows prejudice where "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 335 (citing State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)).

In a voluntary interview with police early in the investigation, Avila-Cardenas denied involvement in the disappearance of the three men and made several other exculpatory statements. At trial, defense counsel referred to this interview during opening statement. Counsel stated that Avila-Cardenas's statements to police were "one of the most telling things in this case" and, in those statements, Avila-Cardenas denied involvement in the crime. VRP (7/8/15)

11

at 680. Counsel was later unable to admit Avila-Cardenas's statement because it was hearsay.

Avila-Cardenas contends that mentioning the statement during opening was deficient performance because counsel should have known the statement was inadmissible hearsay. He argues that he was prejudiced because the deficient performance caused the jury to question defense counsel's credibility.

Avila-Cardenas fails to show that he was prejudiced by the allegedly deficient performance. Considering the overwhelming evidence linking Avila-Cardenas to the murders, there is no reasonable probability that the outcome of the trial would have been different if defense counsel had not mentioned the statement. There is also no reasonable probability that the outcome would have been different if defense counsel had succeeded in introducing the statement. In the voluntary police interview, Avila-Cardenas stated that he returned to Washington on December 15, he did not have a gun, he did not have a cell phone, and he was not involved with the disappearance of the three men. The State presented evidence that Avila-Cardenas returned to Washington on December 8, possessed a gun, and had a cell phone. Under those circumstances, there is no substantial likelihood that the jury would have found Avila-Cardenas's denial of involvement credible.

Avila-Cardenas also contends that he received ineffective assistance of counsel because his attorney failed to move for a mistrial when a defense witness did not appear for trial. The contention is without merit. In his opening

statement, defense counsel stated that he would call a witness named Johnny Bryant. Counsel stated that Bryant would testify that he saw the missing men at about 9:00 p.m. on the evening of their disappearance, contrary to the State's theory that Avila-Cardenas and his associates murdered the victims in the late afternoon. But Bryant failed to respond to the subpoena and did not appear in court. Avila-Cardenas asserts that when his attorney learned that Bryant would not be testifying, he was obliged to move for a mistrial and that the failure to do so was deficient. We disagree because defense counsel may have sound reasons not to move for a mistrial as a matter of trial strategy. State v. Dickerson, 69 Wn. App. 744, 748, 850 P.2d 1366 (1993).[6]

Avila-Cardenas fails to overcome the presumption of effective representation by showing the absence of legitimate reasons not to move for a mistrial. McFarland, 127 Wn.2d at 337. He also fails to show prejudice by demonstrating that, had counsel moved for a mistrial, the court would likely have granted the motion. We reject Avila-Cardenas's claim that he received ineffective assistance of counsel.

---

[6] Avila asserts that the failure to present evidence promised in opening statement is "quite serious." Reply Br at 2. He relies on State v. Greiff, 141 Wn.2d 910, 10 P.3d 390 (2000). The Greiff court, however, rejected the appellant's contention that defense counsel's credibility was seriously injured by the failure to produce evidence referred to during opening statement. Greiff, 141 Wn.2d at 921. Furthermore, the issue in Greiff was whether the trial court erred in denying counsel's motion for a mistrial. Greiff, 141 Wn.2d at 918. In this case the issue is whether counsel rendered deficient performance by not moving for a mistrial. Greiff does not support Avila's argument that the failure to move for a mistrial, in the circumstances here, was deficient performance.

Motion for Mistrial

Next, Avila-Cardenas contends that the trial court erred in denying his motion for a mistrial. His argument rests on Miranda-Cruz's testimony concerning Avila-Cardenas's gun.

During the investigation, Miranda-Cruz told detectives that Avila-Cardenas had a gun. She also told them that he had brandished the gun during an argument and fired into the grass near her feet in order to scare her. Police found a 9 millimeter shell casing in the ground in the area she indicated. A forensic scientist later testified that this casing and the casings found at the murder scene had been fired by the gun found at Avila-Cardenas's home.

Prior to trial, the State moved to admit evidence that Avila-Cardenas had fired the gun in his backyard to show that he had been seen with the gun, knew how to use it, and the casing found at his home matched those found at the murder scene. The court ruled that:

> [t]he State may elicit testimony that the defendant fired his gun in his yard in the presence of Guadalupe Miranda-Cruz sometime prior to the murders. The State may elicit testimony that the casing from this firing was later recovered by Sgt. McNabb. The State may not elicit testimony about the gun being fired in an attempt to frighten Guadalupe Miranda or elicit details about the incident that led to the firing of the gun.

Clerk's Papers (CP) at 186-87.

At trial, Miranda-Cruz testified that Avila-Cardenas had a gun and she had seen him fire it. The prosecutor and Miranda-Cruz had the following exchange:

> Q. And where did it happen?
> A. Outside, at the corner of the garage.
> Q. At your house?

14

A. Yes.
Q. And was anyone else there at the time?
A. One of his cousins.
Q. Where did Alberto aim his gun?
    Defense counsel: Objection.
A. Towards my feet.

VRP (7/14/15) at 1162. Avila-Cardenas objected that the testimony that he had fired towards Miranda-Cruz was highly prejudicial, violated the court's ruling on the motion in limine, and reflected the State's intentional or negligent failure to instruct its witness. He moved for a mistrial.

The State asserted that it instructed Miranda-Cruz to say that Avila-Cardenas had fired the gun towards the ground and expected that she would so testify. The State argued that to Miranda-Cruz, who was testifying without an interpreter, "towards my feet" meant the same thing as "towards the ground." VRP (7/14/15) at 1167. The State proposed asking Miranda-Cruz a follow up question to clarify. The court allowed the State to follow up and reserved ruling on defense counsel's motion for a mistrial.

When Miranda-Cruz's testimony resumed, she and the prosecutor had the following exchange:

Q. Ms. Miranda, when you answered a moment ago that the gun was fired towards your feet, what did you mean?
A. Next to the grass. My feet were next to the grass.
Q. So it was fired into the grass?
A. Yes.

VRP (7/14/15) at 1172-73.

The next day, the trial court stated that it had reviewed the pretrial rulings and the previous day's testimony. The court noted that Miranda-Cruz had not

15

testified as to why Avila-Cardenas fired the gun or any of the surrounding circumstances, the topics prohibited by the pretrial ruling. The court stated that the fact that Avila-Cardenas fired the gun towards Miranda-Cruz's feet was not nearly as prejudicial as the fact that he fired the gun by the garage, where the shell casing was found. This evidence, while prejudicial, was also highly probative, which was why it was admitted in the court's pretrial ruling. The court denied the motion for a mistrial. The court later instructed the jury to consider the testimony "only for the purpose of assessing the significance, if any, of the bullet casing found outside the Defendant's home." VRP (7/16/15) at 1451.

We review the trial court's denial of a motion for a mistrial for abuse of discretion. State v. Gamble, 168 Wn.2d 161, 177, 225 P.3d 973 (2010). We will overturn the trial court's decision only if there is a substantial likelihood that a trial irregularity prejudiced the defendant and affected the outcome of the trial. Id. In making this determination, we consider (1) the seriousness of the irregularity; (2) whether the improper evidence was cumulative of other evidence; and (3) whether a curative instruction was given. State v. Weber, 99 Wn.2d at 164-65.

Avila-Cardenas asserts that a trial irregularity occurred when Miranda-Cruz introduced highly prejudicial evidence in violation of a pretrial ruling. This argument is without merit.

The ruling on the motion in limine admitted evidence that Avila-Cardenas fired the gun in his yard in the presence of Miranda-Cruz. It prohibited evidence that Avila-Cardenas fired the gun to frighten Miranda-Cruz and details about what

led to the incident. Miranda-Cruz did not testify to the circumstances that led Avila-Cardenas to fire the gun or his intent in so doing. Miranda-Cruz did not violate the pretrial ruling.

Furthermore, even if Miranda-Cruz's statement as to where Avila-Cardenas fired the gun was improper, any prejudice was cured by the limiting instruction. Avila-Cardenas fails to show a substantial likelihood that the allegedly improper testimony affected the outcome of the trial. The trial court did not abuse its discretion in denying Avila's motion for a mistrial.

Avila-Cardenas contends, however, that Miranda-Cruz's testimony amounted to impermissible character evidence that he had a propensity for violence. He thus appears to assert that, even if the evidence did not violate the pretrial ruling, it should not have been admitted. We review a trial court's decision on the admissibility of evidence for abuse of discretion. State v. Castellanos, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997). The trial court abuses its discretion only when it adopts a view that no reasonable person would take. Id.

Evidence that Avila-Cardenas fired a gun in the backyard, toward Miranda-Cruz's feet, was highly prejudicial. But, as the trial court stated, it was also highly probative. The decision to admit the evidence was not unreasonable. There was no abuse of discretion.

Prosecutorial Misconduct

Avila-Cardenas next contends that prosecutorial misconduct deprived him of a fair trial and requires reversal. To prevail on a claim of prosecutorial

17

misconduct, the defendant must show that the prosecutor's conduct was both improper and prejudicial. State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).

Avila-Cardenas first argues that the prosecutor committed misconduct by eliciting inadmissible evidence. Avila-Cardenas asserts that, by asking Miranda-Cruz where he aimed the gun, the State elicited details about the incident that led to the firing of the gun, details that were expressly prohibited by the pretrial ruling. Avila-Cardenas asserts that the prosecutor's conduct is identical to that identified as reversible error in Fisher. In that case, the prosecutor elicited the very evidence that the trial court ruled inadmissible under ER 404(b) in a pretrial ruling. Fisher, 165 Wn.2d. at 748-49.

Fisher is distinguishable because, as discussed above, Miranda-Cruz's testimony did not violate the pretrial ruling. And there is no indication that the State deliberately sought to elicit the statement that Avila-Cardenas fired towards Miranda-Cruz's feet.[7] Avila-Cardenas fails to show that the prosecutor's conduct was improper.

---

[7] The trial court rejected the allegation of impropriety below. In response to Avila-Cardenas's assertion that the prosecutor intentionally elicited the information that Avila-Cardenas fired towards Miranda-Cruz's feet, the court stated:

> So let me just make one thing clear. I don't for a minute believe there's been any ethical violation here. I think that the answer that we were all expecting the witness to give was, 'towards the ground,' and instead she said, 'towards my feet.'

VRP (7/14/15) at 1169. Avila-Cardenas points to nothing in the record indicating that this ruling was error.

Avila-Cardenas next contends that the prosecutor committed misconduct by appealing to the jury's passion and prejudice during closing argument. Although a prosecutor has wide latitude in closing argument, "bald appeals to passion and prejudice constitute misconduct." Fisher, 165 Wn.2d at 747. A prosecutor may appeal to the jury's passion by urging it to convict in order to protect the community or to send a message to other criminals. See State v. Ramos, 164 Wn. App. 327, 338, 263 P.3d 1268 (2011); State v. Bautista Caldera, 56 Wn. App. 186, 195, 783 P.2d 116 (1989).

In this case, the prosecutor stated in closing argument that some crimes do not receive as much attention as others, "almost as if some lives have more value than others. . . ." VRP (7/22/15) at 1753. Avila-Cardenas objected to the argument as inflaming the passions of the jury. The trial court overruled the objection. The prosecutor continued, arguing that a predator may believe he can get away with a crime because no attention is focused on it. The prosecutor then stated:

> Why would anyone give any time, any attention to three Mexican warehouse workers who just disappear? Survivors won't report it. The police won't spend any time on it. And the justice system? Nothing will ever come of it.
> It would just be three Mexicans gone from sight in south King County, whatever score needed settling will have been settled, and just like that, it will be over, and people will move on.
> But as a result of that thinking, the defendant let down his guard. He became careless. He was sloppy. And he was arrogant in his belief that this day, today, would never come. He was wrong.
> The survivors did report it. The police did work on it. And now the justice system is addressing a crime and behavior that was in fact vicious and depraved and cruel, looking at it square in the

eye, everyone in this courtroom, you, with caring and attention and purpose.

VRP (7/22/15) at 1753-54.

Avila-Cardenas challenges the propriety of this line of argument. As an initial matter, we must determine the standard of review. A defendant raising a claim of prosecutorial misconduct must generally show that the prosecutor's conduct was improper and prejudicial. Fisher, 165 Wn.2d at 747. But where the defendant did not object below, he has waived a claim of misconduct unless he demonstrates that the prosecutor's conduct was flagrant, ill-intentioned, and so prejudicial that it could not have been cured through an instruction to the jury. Id. (citing State v. Gregory, 158 Wn.2d 759, 841, 147 P.3d 1201 (2006)).

Avila-Cardenas asserts that his objection at the beginning of the prosecutor's argument sufficed as an objection to all of the prosecutor's appeals to passion and prejudice. He thus contends that he must only demonstrate that the argument was improper and prejudicial. We disagree. Avila-Cardenas's challenge on appeal concerns the prosecutor's references to the victims' ethnicity. He did not raise this objection below. To prevail here, Avila-Cardenas must meet the heightened standard.

Avila-Cardenas contends that the prosecutor's argument was an improper appeal to the jury's passion and prejudice. He argues that the prosecutor's intent was to invoke a sense of societal shame, and the argument was thus analogous to asking the jury to convict in order to send a message about the justice system.

20

The State contends that the prosecutor was addressing the nature of the crime and drawing inferences from Avila-Cardenas's behavior after the crime. The State points out that the crime involved kidnapping and murdering three persons in an apparent execution. Evidence at trial indicated that, after shooting the victims, Avila kept the murder weapon, returned to his normal life, and voluntarily went to the police station to give a statement denying that he was in the state at the time of the murders.

The State's argument falls short because, while the evidence reasonably led to the inference that Avila-Cardenas believed he would not be caught, no evidence created the inference that Avila-Cardenas believed he would not be caught because the victims were Mexican and no one would pay attention to their disappearance. By arguing that, in this case, "the justice system is addressing a crime and behavior that was in fact vicious and depraved and cruel, looking at it square in the eye, everyone in this courtroom, you, with caring and attention and purpose," the prosecutor urged the jury to convict to demonstrate a societal lack of prejudice. VRP (7/22/15) at 1754. The argument was improper.

However, Avila-Cardenas must show that the improper argument was so prejudicial that it could not have been cured by an instruction to the jury. Fisher, 165 Wn.2d at 747. To establish prejudice, the defendant must show a substantial likelihood that the misconduct affected the jury's verdict. State v. Thorgerson, 172 Wn.2d 438, 443, 258 P.3d 43 (2011) (citing State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). We assess the prejudice of the misconduct in the

21

context of the entire case. Id. (citing State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

Avila-Cardenas makes no argument that the prosecutor's misconduct was so prejudicial that it could not have been cured through instruction. And, assessing the improper argument in the context of the entire case, we see no likelihood that the impropriety affected the jury's verdict.

The prosecutor's argument concerning the ethnicity of the victims was improper, but there was no objection to the argument and the prejudice was not incurable. We reject Avila-Cardenas's claim of prosecutorial misconduct.

Avila-Cardenas next asserts that, if his lack of objection below was fatal to his claim of prosecutorial misconduct, defense counsel rendered ineffective assistance in failing to object. We reject this attempt to overcome the lack of objection. Review under the standards for prosecutorial misconduct is sufficient to determine whether the prosecutor's remarks warrant reversal. The failure to establish prejudice as part of his prosecutorial misconduct claim is fatal to Avila-Cardenas's ineffective assistance of counsel claim. But, the claim fails in any event because Avila-Cardenas cannot show that defense counsel's failure to object during closing argument constituted deficient performance. "Defense counsel's failure to object to a prosecutor's closing argument will generally not constitute deficient performance because lawyers 'do not commonly object during closing argument 'absent egregious misstatements.'" In re Pers. Restraint

of Cross, 180 Wn.2d 664, 721, 327 P.3d 660 (2014) (quoting In re Pers.
Restraint of Davis, 152 Wn.2d 647, 717, 101 P.3d 1 (2004)).

Cumulative Error

Next, Avila-Cardenas argues that the cumulative effect of the trial court's
errors require reversal. An accumulation of otherwise nonreversible errors may
deny a defendant a fair trial. State v. Coe, 101 Wn.2d 772, 789, 684 P.2d 668
(1984). The doctrine is inapplicable here, where Avila-Cardenas has not
demonstrated that the trial court erred.

Sentencing

Avila-Cardenas next contends that the trial court improperly considered
his lack of remorse in imposing the maximum standard range sentence.

At sentencing, the court must allow arguments from, among others, the
offender and survivors of the victim. State v. Mail, 121 Wn.2d 707, 709-10, 854
P.2d 1042 (1993) (citing former RCW 9.94A.110 (2001)). The court may impose
any sentence it deems appropriate within the statutory standard range. Id. at 711
(citing former RCW 9.94A.370(1) (2001)). A standard range sentence may only
be appealed on procedural or constitutional grounds. Id. at 712-13.

In this case, after hearing from the family of the victims, Avila-Cardenas
chose to address the court. He stated that his hands and his conscience were
clean. Avila-Cardenas also spoke about the victims and said there was a contrast
between their actual lives and the "beautiful things" their families said about
them. VRP (10/9/15) at 109. He lamented that he was unable to present

evidence about the victims because of "the way the system is designed." Id. at 109-10. In imposing its sentence the court stated as follows:

> And so while I don't punish people for maintaining their innocence, it is still the case that Mr. Avila-Cardenas has shown no remorse whatsoever for the horrendous harm that he caused to the three victims and to their families; and I think the Court -- it's legitimate for the Court to take the lack of remorse into consideration.
>
> But what really influences the Court more than that is the brutality of the crime that was committed, the cruelty that was part of this. The fact that three young men were kidnap[ped], they had their hands bound, they were stuffed into the back of a pickup truck and they were transported to their death and then they were executed in cold blood. The Court cannot imagine a more cold-blooded, horrendous crime than this one.
>
> There are no mitigating circumstances. This was a crime that was carefully planned, smoothly executed, and as a result three young men were taken away from their families, from their loved ones, and while their suffering was intense, the suffering of the -- it stopped when they were killed. But the suffering of families and their loved ones continues. And so while this court does not readily impose the maximum because the Court usually finds some mitigating circumstances, this is one of those cases where the Court believes that the maximum sentence is justified and, therefore, the Court imposes 1140 months on Mr. Avila-Cardenas, which equals 95 years in prison.

Id. at 113-14.

Avila-Cardenas contends, without citation to any relevant authority, that the trial court violated his constitutional right against self-incrimination by inferring lack of remorse from his statement.[8] He asserts that showing remorse would

---

[8] Avila-Cardenas relies on a Montana case, State v. Shreves, 313 Mont. 252, 60 P.3d 991 (2002). The case does not support his argument. In Shreves, the court held that it was improper to infer lack of remorse from a defendant's silence. Shreves, 313 Mont. at at 257. The Shreve court stated, however, that a sentencing court may properly infer lack of remorse from a defendant's statements. Id. at 260.

24

have required him to incriminate himself. The argument is meritless. Avila-Cardenas was neither compelled to speak nor compelled to utter the words he spoke. Instead, he voluntarily chose to make remarks that disparaged the victims and disputed the credibility of their families. That the court inferred a lack of remorse from his voluntary statements implicates no constitutional right. The court did not err in imposing its sentence.

Appellate Costs

Avila-Cardenas asks that, if we reject his claims, we deny any request for appellate costs. Appellate costs are generally awarded to the substantially prevailing party on review. RAP 14.2. However, when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2.

The trial court found Avila-Cardenas indigent. Under RAP 14.2, if the State has evidence indicating that his financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner. State v. St. Clare, 198 Wn. App. 371, 382, 393 P.3d 836 (2017).

Statement of Additional Grounds

In a statement of additional grounds, Avila-Cardenas contends that the trial court denied him a fair trial by denying a testimonial privilege, denying a motion to suppress, and making erroneous evidentiary decisions. He further

contends that the trial was marred by government and prosecutorial misconduct, ineffective assistance of counsel, media coverage that biased the jury, insufficient evidence, and an allegedly deficient information. These challenges are without merit. We address them briefly.

Avila-Cardenas asserts that the trial court erred in denying his motion to exclude Miranda-Cruz's testimony under the marital privilege. He contends Miranda-Cruz was his de facto spouse because they lived together and held themselves out as married.

The marital privilege applies to a "spouse or domestic partner." RCW 5.60.060. "Domestic partner" is defined as "state registered domestic partner." RCW 26.60.025. Avila-Cardenas and Miranda-Cruz were neither married nor registered domestic partners. The trial court properly ruled that the marital privilege did not apply.[9]

Avila-Cardenas next argues that the warrant authorizing the search of his home was deficient. He repeats arguments raised by counsel below in a motion to suppress. We review a trial court's factual findings on a motion to suppress for substantial evidence. State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). We review the trial court's legal conclusions de novo. State v. Schultz, 170 Wn.2d 746, 753, 248 P.3d 484 (2011).

---

[9] Avila-Cardenas's reliance on State v. Denton, 97 Wn. App. 267, 983 P.2d 693 (1999), is also unavailing. In this case, unlike in Denton, there is no evidence that the parties contracted for marriage.

26

Avila-Cardenas argued below that the officer who wrote the affidavit deliberately or recklessly misrepresented facts in violation of Franks v. Delaware, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). He also argued that informants relied upon in the affidavit were not reliable under the Aguilar-Spinelli test.[10]. After a hearing on the issue, the trial court found that the evidence did not support Avila-Cardenas's Franks claim. The court found that statements attributed to a confidential informant did not meet the Aguilar-Spinelli test and excised the relevant passages of the affidavit. The court concluded that, even with these excisions, the affidavit was sufficient to establish probable cause.

The trial court's findings are supported by substantial evidence. Avila-Cardenas points to no legal error. The trial court did not err in denying Avila-Cardenas's motion to suppress.

Avila-Cardenas also contends that the trial court erred in several evidentiary decisions. We review a trial court's decision to admit or exclude evidence for abuse of discretion. State v. Griffin, 173 Wn.2d 467, 473, 268 P.3d 924 (2012).

Avila-Cardenas asserts that the trial court erred in admitting expert testimony, the gun, and the cell phone evidence. He contends that the trial court erred in excluding evidence of the victims' lifestyle, Miranda-Cruz's infidelity and immigration status, and hearsay statements by Velez-Fombona. In each case,

---

[10] See State v. Jackson, 102 Wn.2d 432, 440-41, 668 P.2d 136 (1984) (holding that Washington uses the Augilar-Spinelli test to evaluate informants' tips).

Avila-Cardenas fails to show that the trial court's decision was manifestly unreasonable. There was no abuse of discretion.

Next, Avila-Cardenas contends that he received ineffective assistance of counsel. He argues that defense counsel was deficient for failing to request a material witness warrant, proceeding with pretrial hearings in the absence of expected witnesses, failing to impeach Miranda-Cruz with evidence that the State offered her an "S" visa or with evidence of her infidelity, and failing to adequately prepare for trial. Avila-Cardenas fails to demonstrate prejudice from any of these alleged deficiencies.

Avila-Cardenas also asserts that he received ineffective assistance of counsel because his attorneys did not show the jury the contact list from his cell phone which, he asserts, would have supported his claim that he did not know Velez-Fombona. This argument depends upon evidence outside the record and is thus beyond our ability to consider. McFarland, 127 Wn.2d at 338.

Avila-Cardenas next asserts several claims of government misconduct. Government misconduct may be grounds for dismissal where the misconduct was prejudicial and materially affected the defendant's right to a fair trial. CrR 8.3(b).

Avila-Cardenas contends that the government committed misconduct by offering Miranda-Cruz an "S" visa[11] in exchange for her testimony and failing to

---

[11] An "S" Visa may be granted to a noncitizen who assists law enforcement as a witness or informant. 8 U.S.C. § 1101(a)(15)(S).

use court certified interpreters in all investigative interviews. He asserts that the trial court committed misconduct by allowing some witnesses to remain in the courtroom during trial and instructing the jury in accomplice liability. Avila-Cardenas fails to show that the conduct he complains of was improper or prejudicial. Avila-Cardenas also asserts that the prosecutor, police officers, and Miranda-Cruz lied, amounting to government or prosecutorial misconduct. If there is any evidence to support these claims, it is outside the record.

Avila-Cardenas argues that the government committed misconduct by manipulating the charges against him in order to take a custodial statement outside the presence of his attorney. Defense counsel raised this argument below and the State conceded the issue. The challenged statement was not introduced at trial. Because the statement was not used against him, Avila-Cardenas fails to show prejudice.

Next, Avila-Cardenas asserts that he did not get a fair trial because, despite news coverage that biased the jury against him, the court denied his motion for a mistrial. Consideration of evidence outside the record constitutes juror misconduct and may be grounds for a new trial. State v. Balisok, 123 Wn.2d 114, 118, 866 P.2d 631 (1994). We review the trial court's decision on a motion for a new trial for abuse of discretion. Id. at 117.

On the second day of trial, counsel informed the court that a local online news outlet published a photo of Avila-Cardenas being handcuffed. Avila-Cardenas argued that the jury was likely to see the photo and moved for a

mistrial. Id. at 685. The court asked the jury if anyone had seen any local media coverage regarding the case. Id. at 690. None of the jurors answered in the affirmative. Id. There was no error.

Avila-Cardenas next appears to challenge the sufficiency of the evidence supporting his conviction. He contends that there is no confession, eyewitness, motive, fingerprints, or DNA linking him to the crime. He also asserts that the State failed to prove that the gun was his and failed to prove that he bought the zip ties used in the murders.

Evidence is sufficient when, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. State v. Varga, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). Circumstantial and direct evidence carry equal weight. Id.

In this case, the State presented evidence that Avila's cell phone was in the vicinity of the crime scene at the relevant time, a gun with blood spatter from one of the victims was found in Avila's home, and that gun fired both the shell casings found at the murder scene and the casing found in Avila's backyard. The evidence is sufficient to support the conviction.

Finally, Avila-Cardenas contends that the information was deficient because it did not define "premeditation" or state the elements of premeditation. Charging documents must include all essential elements of a crime. State v. Zillyette, 178 Wn.2d 153, 158, 307 P.3d 712 (2013) (citations omitted). But the information does not need to include definitions of elements. State v. Johnson,

No. 74100-4-I/31

180 Wn.2d 295, 302, 325 P.3d 135 (2014). Avila-Cardenas's claim is without merit.

Affirmed.

WE CONCUR:

Spearman, J.

Mann, J.

Schindler, J.

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2017 AUG 21  AM 11: 24

31